# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| U.S. BANK TRUST, N.A., | Case No.: 2:16-cv-00741-APG-NJK |
| Plaintiff | **Order (1) Denying Bank's Motion for Summary Judgment and (2) Granting SFR's Motion for Summary Judgment** |
| v. | |
| SFR INVESTMENTS POOL 1, LLC, et al., | [ECF Nos. 56, 57] |
| Defendants | |

Plaintiff U.S. Bank Trust, N.A. (Bank) sues to determine whether a deed of trust still encumbers property located at 3833 White Quail Court in North Las Vegas following a non-judicial foreclosure sale conducted by a homeowners association (HOA), defendant Gleneagles Homeowners Association (Gleneagles). Bank seeks a declaration that the HOA sale did not extinguish the deed of trust and it asserts various damages claims against Gleneagles and Gleneagles' foreclosure agent, defendant Nevada Association Services, Inc. (NAS). It also asserts claims for unjust enrichment and tortious interference with contract against defendant SFR Investments Pool 1, LLC (SFR), which purchased the property at the HOA sale.

Bank moves for summary judgment on its declaratory relief claim, arguing that tender would have been futile because NAS would not accept a tender payment for anything less than the full lien amount. Alternatively, Bank argues that the sale should be equitably set aside because the price SFR paid was grossly inadequate and the sale was marred by unfairness. Specifically, Bank contends that Gleneagles' Covenants, Conditions and Restrictions (CC&Rs) contained a mortgage protection clause and NAS had policies in place under which NAS refused to provide payoff information and rejected payoff attempts for anything less than the full lien amount.

1    SFR opposes and moves for summary judgment on all of Bank's claims against it.  SFR
2   argues the sale should not be equitably set aside because Bank never pleaded futility of tender,
3   no tender attempt was ever made, there is no evidence Bank knew about NAS's policies, the sale
4   was properly conducted, and it is a bona fide purchaser.  SFR also argues Bank's unjust
5   enrichment claim fails because Bank never disclosed a computation of damages; Bank has
6   produced no evidence that it paid any taxes, insurance, or assessments after the HOA sale; and
7   any such claim would be barred by the voluntary payment doctrine.  Next, SFR contends Bank's
8   tortious interference claim is untimely and lacks merit because there is no evidence SFR had any
9   involvement with the former homeowner's failure to pay HOA assessments.  Finally, SFR
10   requests the Bank's recorded notice of lis pendens be expunged.

11    The parties are familiar with the facts, so I will not repeat them here except where
12   necessary to resolve the motions.  I grant SFR's motion and deny Bank's motion on the
13   declaratory relief claim because Bank cannot show it knew of NAS's policy of rejecting tender
14   attempts with certain conditions attached and because there is no basis to equitably set aside the
15   sale.  I grant SFR's motion on the unjust enrichment claim because there is no evidence Bank
16   made any payments on the property.  Finally, I grant SFR's unopposed motion for summary
17   judgment on the tortious interference claim because there is no evidence SFR caused the
18   homeowner to default on either the HOA assessments or the note secured by the deed of trust.

19   **II. ANALYSIS**

20    Summary judgment is appropriate if the movant shows "there is no genuine dispute as to
21   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
22   56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."
23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

**A. Declaratory Relief**

1. Futility of Tender

Bank relies on the Supreme Court of Nevada's decision in *7510 Perla Del Mar Ave Trust v. Bank of Am., N.A.* (*Perla*), 458 P.3d 348 (Nev. 2020) (en banc) to argue tender was futile.  In *Perla*, Bank of America, through the law firm Miles, Bauer, Bergstrom & Winters, LLP (Miles Bauer), sent a letter to the HOA's foreclosure agent, which in that case was also NAS, requesting the superpriority amount and offering to pay that amount. *Id.* at 349.  NAS received the letter but did not respond to it. *Id.*  Instead, NAS proceeded with the foreclosure sale. *Id.*  There was evidence that, at the time Miles Bauer sent the letter to NAS in March 2012, NAS had a policy of rejecting checks "for less than the full amount if it was accompanied by a condition," and Miles Bauer was aware of NAS's policy. *Id.*  The Supreme Court of Nevada held that "[b]ecause NAS had a known policy of rejecting any payment for less than the full lien amount, . . . the Bank's

1  obligation to tender the superpriority portion of the lien was excused, as it would have been

2  rejected." *Id.* at 351.  Excuse of tender, like tender itself, cures the default of the superpriority

3  portion of the lien by operation of law. *Id.* at 350 n.1.

4          Bank cannot resort to futility in this case because there is no evidence Bank knew of

5  NAS's policy.  Bank did not hire Miles Bauer and there is no evidence it or its servicer engaged

6  in communications with NAS through which it would have learned of NAS's policy like Miles

7  Bauer did.  Nor is there evidence that NAS rejected every partial payment by a lender.  Rather,

8  NAS rejected payments sent by Miles Bauer because of the conditional language in the Miles

9  Bauer letters. *See, e.g.*, ECF Nos. 56-19 at 8-9 (stating NAS would accept tender of less than the

10 full lien amount so long as there were no conditions on the check); 59-1 at 67-68 (stating NAS's

11 policy was to accept partial payments "if there [were] no conditions placed on acceptance of the

12 check" or if NAS agreed to the condition); *id.* at 93 (stating NAS would accept partial payments

13 so long as there were no conditions).  Bank has not presented evidence that it (like Miles Bauer)

14 sent payments with conditional letters that NAS then rejected, either in this case or with respect

15 to any other property.  Bank thus has not raised a genuine dispute that a tender attempt by it for

16 this property would have been futile.

17                                  2.  Equitably Set Aside Sale

18         To equitably set aside the sale, there must be proof of an inadequate price plus "some

19 element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of

20 price." *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641,

21 642-43 (Nev. 2017) (quotation omitted).  Where the price inadequacy "is great, a court may grant

22 relief based on slight evidence of fraud, unfairness, or oppression." *Id.* at 643.  However, the

23 fraud, unfairness, or oppression must have affected "the sale itself." *Res. Grp., LLC as Tr. of E.*

1  *Sunset Rd. Tr. v. Nev. Ass'n Servs., Inc.*, 437 P.3d 154, 160 (Nev. 2019) (en banc) (emphasis

2  omitted).   And even where there is an inadequate price brought about by fraud, unfairness, or

3  oppression, I am not required to set aside the sale.  Rather, I must weigh all of the equities,

4  including the lienholders' inaction and the impact the requested relief may have on a bona fide

5  purchaser. *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1114-15 (Nev. 2016) (en

6  banc).  Bank bears "the burden to show that the sale should be set aside in light of [SFR's] status

7  as the record title holder . . . and the statutory presumptions that the HOA's foreclosure sale

8  complied with [Nevada Revised Statutes (NRS)] Chapter 116's provisions." *Saticoy Bay LLC*

9  *Series 2227 Shadow Canyon*, 405 P.3d at 646 (internal citations omitted).

10       Even viewing the evidence in the light most favorable to Bank, and even if the price was

11  inadequate, Bank has not presented evidence of fraud, oppression, or unfairness.  Bank relies on

12  futility of tender to show unfairness, but as stated above, there is no evidence tender would have

13  been futile in the context of this case.  Nor is there evidence that Bank knew tender would be

14  futile and that is why it either did not attempt tender or took no other action to preserve the deed

15  of trust.

16       The only other possible unfairness Bank identifies is the so-called mortgage protection

17  clause in Gleneagles' CC&Rs.  However, the CC&Rs track the statutory language that grants

18  HOAs a superpriority lien and state that the HOA's lien is prior to the first deed of trust to the

19  extent of six months' worth of assessments. ECF No. 56-20 at 20.  Indeed, the so-called

20  mortgage protection clause on which Bank relies states that the CC&Rs are "[s]ubject to the

21  priorities established by NRS 116.3116." *Id.* at 21.

22       Regardless, an HOA cannot subordinate the superpriority lien to a first deed of trust

23  through its CC&Rs.  Under NRS § 116.1104, Chapter 116's "provisions may not be varied by

agreement, and rights conferred by it may not be waived . . . [e]xcept as expressly provided in" Chapter 116, and nothing in Chapter 116 "expressly provides for a waiver of the HOA's right to a priority position for the HOA's super priority lien." *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 418-19 (Nev. 2014) (en banc) (quotations omitted); *see also RLP-Vervain Court, LLC v. Wells Fargo*, No. 65255, 2014 WL 6889625, at *1 (Nev. Dec. 5, 2014) ("[A]n association may not waive its right to a priority position for the association's superpriority lien.").  Thus, even if potential bidders were aware of the CC&Rs, they also presumably "were aware of NRS 116.1104, such that they were not misled." *JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1, LLC*, No. 70423, 433 P.3d 263, 2019 WL 292823, at *1 (Nev. 2019).  Moreover, Bank has presented no evidence that it or anyone else relied on the CC&Rs.  Because there was no fraud, unfairness, or oppression, there is no basis to set aside the sale.

Even if there were irregularities, I still must weigh Bank's inaction when determining whether to set aside the sale. *Shadow Wood HOA*, 366 P.3d at 1114-15.  There is no evidence that Bank took action prior to the sale to preserve the deed of trust, and Bank waited nearly three years after the sale to bring this lawsuit.  Even if SFR is not entitled to bona fide purchaser status (despite having no basis to know of any reason why the deed of trust would survive the sale),[1] there is no basis to set aside the sale when considering the "entirety of the circumstances that bear upon the equities." *Id.* at 1114.  I therefore grant SFR's motion for summary judgment and deny Bank's motion on Bank's declaratory relief claim.

/ / / /

/ / / /

---

[1] *See Shadow Wood HOA*, 366 P.3d at 1115-16 (stating that mere knowledge that a lienholder can move to equitably set aside the sale is insufficient to defeat bona fide purchaser status absent actual, constructive, or inquiry notice of the basis for the challenge).

**B.  Unjust Enrichment**

Bank's unjust enrichment claim is based on its allegation that after the HOA sale, it paid taxes, insurance, and HOA assessments for the property. ECF No. 33 at 10-11.  Bank has presented no evidence it made any such payments.  I therefore grant SFR's motion for summary judgment on this claim.

**C.  Tortious Interference with Contractual Relations**

To establish a claim for intentional interference with contractual relations, a plaintiff must show: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).  Bank did not respond to SFR's motion with respect to this claim, so Bank has not pointed to evidence supporting its allegation that SFR took actions intended or designed to disrupt Bank's contract with the former homeowner, that such actions disrupted the contractual relationship, or that Bank suffered damages as a result.  I therefore grant SFR's motion for summary judgment on this claim.

**D.  Lis Pendens**

SFR requests that Bank's lis pendens be expunged.  Bank contends the lis pendens should not be expunged until this case, including any appeal, is resolved.

Under Nevada law, a lis pendens (or notice of legal action affecting real property) must be expunged if the party that recorded it fails to establish:

> (a) The action is for the foreclosure of a mortgage upon the real property described in the notice or affects the title or possession of the real property described in the notice;
> (b) The action was not brought in bad faith or for an improper motive;

        (c) The party who recorded the notice will be able to perform any conditions precedent to the relief sought in the action insofar as it affects the title or possession of the real property; and

        (d) The party who recorded the notice would be injured by any transfer of an interest in the property before the action is concluded.

Nev. Rev. Stat. § 14.015(2).  The party who recorded the notice must also establish "to the satisfaction of the court" either that (1) it is "likely to prevail in the action" or (2) it "has a fair chance of success on the merits in the action" and "the hardship on him or her in the event of a transfer would be greater than the hardship on the defendant resulting from the notice of pendency." *Id.* § 14.015(3).  Bank has not shown it has a fair chance of success on the merits, much less a likelihood of prevailing, so I grant SFR's request to expunge the lis pendens.

### E.  Remaining Claims

No party moved for summary judgment on Bank's damages claims against Gleneagles and NAS.  Those claims therefore remain pending.

## II. CONCLUSION

I THEREFORE ORDER that plaintiff U.S. Bank Trust, N.A.'s motion for summary judgment **(ECF No. 56) is DENIED**.

I FURTHER ORDER that defendant SFR Investments Pool 1, LLC's motion for summary judgment **(ECF No. 57) is GRANTED**.

I FURTHER ORDER that defendant SFR Investments Pool 1, LLC's request to expunge lis pendens is GRANTED.  Plaintiff U.S. Bank Trust, N.A. is ordered to record a copy of this order with the Clark County Recorder by November 6, 2020.  This order has the same effect as an expungement of the original notice.

DATED this 15th day of October, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE